Mount v. PulsePoint Samuel Zakaroff, Appellant Apple products are marketed on the basis of superior privacy protection, they are the only products with browsers that are set to block what are called third-party cookies, and the business venture of PulsePoint at this point was to disable that function so as to render them transparent. We claim that this is a violation of restitutionary principles of unjust enrichment and of GBL 349 under New York law. Can you tell us how, looking at the 349 cause of action, how your clients were injured by the practices? Yes, Your Honor. I think that both claims turn on the exact same injury, which is the taking of something of value. I think the district court erred fundamentally in believing that the only harm covered by either restitution or 349 was a harm to money taken from them as opposed to something of value being taken from them. And according to the district court, if there are plaintiffs, that defeats the claim both under restitution and 349. I think the restitution, if I could start there, Your Honor, is a little bit easier to see. If I could just ask a preliminary matter. Am I right in understanding that the complaint does not allege anywhere that your clients, the named plaintiffs, actually had cookies installed on their own computers? No, it does allege that. It said that they visited certain websites from which the cookies were put on their computers. That seems to me a kind of step away from saying that they actually had, one has to deduce or infer, I guess, that because they visited those websites, that they would have had cookies placed on them. There's some general allegations about being, as members of the class, they would have. But do you know, can you allege that they actually did? As I understand the technology, Judge Carney, this was all removed from their computers by the defendant after the fact. So we have to reconstruct that based upon discovery. We haven't gotten to discovery. What we've alleged is that they had visited websites, CBS Sports, Wall Street Journal, through which PulsePoint cookies were placed on their computers. That is correct. That is correct, Your Honor. May I ask you with the injury that you just identified, that they took something of value? Yes, Your Honor. As I understood some of the district court's discussion, part of the problem with that is that the nature of this type of information on a computer meant that whatever they took, whatever the defendants took, your client still had the use of. And so it wasn't the same as, you know, you take someone's car, they no longer have their car, that you still had the ability to do everything you could have done beforehand. And so to that extent, it wasn't the taking of something of value because it didn't deprive you of anything. Tell me why that isn't a sound way of looking at this. Well, it is true that we could monetize that prospectively, but the retrospective period in question, that when the cookies were placed, is already a done deed. And under restitution, for example, it is the taking of anything of value of us inappropriately that is what triggers the restitutionary obligation. But the value of it is what I thought the district court was concerned about. Had you wanted to do something with the exact same information during that past period, you could have. You didn't. And I'm not condoning what the defendants did here at all, but I'm trying to understand what it is you were deprived of. Well, let me give an example by way of a hypothetical. Imagine I have a hunting cabin, and I only use it during hunting season. And when I'm not using it, somebody discovers how to get in the back door. And then they rent out my hunting cabin during the periods when I'm not there without my knowledge. At that point, anything that they have acquired through this illicit conduct is subject to restitution. That is the fundamental of restitutionary principles. I think what the district court made a mistake in believing that only if I had a legal claim for damages, as for example in the court's example of not having the exclusive right of during that period, I may suffer no harm. That is, the cabin may be in excellent situation. They may clean it. They may do everything else. The fact that they wrongfully profited from my undertaking is what deprives me of a value, and their inappropriate gains from that is what gives rise to the restitutionary claim. If I could just quote from the Restatement of Restitution, unjust enrichment of a conscious wrongdoer is the net profit attributable to the underlying wrong. The object of restitution in such cases is to eliminate profit from wrongdoing. The underlying wrong in the cabin example is a trespass. That's a common law tort that's well established. Here, the tortious basis for the claim is a little less clear, isn't it? That is correct, Your Honor, but it does not have to be actionable at law. The very purpose of restitution is that it's also actionable as a matter of equity. So there are all sorts of claims where there is an incursion of some or a cost associated with improper conduct, and every court that has looked at this has said that this shocks the conscience, this is something that is inequitable, that it's an egregious breach of social norms, said the Third Circuit in the Google case about this. That was under California law, though, right? It was under California law, and I— Particularly the social norms reference. Yes, and I concede that New York has not made actionable a tort this particular kind of privacy claim, but Section 340—if I can go to 349 for a second—Section 349G says independent of other sources of law, deceptive conduct that imposes an injury of any kind, and here the injury is that they trespassed our computers. This is an entry— You're not appealing the trespass to chattels, though. I'm not appealing trespass to chattels, and neither 349G nor the restitution claim turns on there being an independent tort of either trespass or trespass to chattels as a predicate. The predicate for restitution is that they were unjustly enriched as a result of conduct which transcends some social norm. At your expense. At my— At your expense, and isn't the concern here that you fail to allege a specific loss or deprivation of opportunity to profit from their personalized information? You see, this is why the cabin analogy is not quite apt, because two people couldn't have rented the cabin at the same time. The concern I thought the district court had here is that the curious nature of this information is that at the same time they were taking advantage of it, you could have, and so there is inadequately pleaded how they're unjustly enriched at your expense. But I'm more than willing to hear how it occurred, because I understand that the nature of the conduct is troubling. Well, Your Honor, let me address that point, because the district court said something which I think is just flat wrong. The district court said at page 183 of the record, Plaintiffs concede that they have failed to plead injury based on misappropriation of the value of their browsing information, and that that's the basis for the dismissal. The citation to that is page 12 of our brief in the court below, and the brief says, Plaintiffs are injured by the misappropriation of their valuable personal information, specifically their web browsing histories, even absent out-of-pocket losses. Such injury provides the only basis for the unjust enrichment claim. Where data is misappropriated and used for financial gain by another, the victim suffers injury even absent the victim's intent to monetize the data himself. Reading again from? From page 12 of our reply brief, which is the same point that's made in paragraph 32 of our complaint. What is the authority for that in New York law, that it can occur without it being at your expense? Well, it's the elements of restitution from the K.V. Grossman opinion of this court, which sets out the elements as being the defendant benefited. And now the question is, what's at our expense? That's the key question. And the district court reduced at our expense to something that would give rise to damages at law. That has never been the tradition of restitution, which is an equitable remedy. It seems to me you're saying that a trespass basically triggers restitution, because I understand why you would argue that what they did was a trespass onto your computers. But why is it now a use at your expense? They hacked our computer, Your Honor. They entered our computer. That sounds like a trespass. Well, it is a kind of trespass, but it's a trespass in a virtual domain, Your Honor. It's hard to get the literal fit, but they hacked our computer. We know that this has value because Apple, which is a sophisticated market actor, says buy our product because we guarantee you better privacy. And we know that firms like Google will pay $100 a year to have free access to your web information. Instead, they surreptitiously came in and took this from us. That's the allegation here. And the allegation is that that's a modern form of trespass. But, again, so why aren't you pressing the trespass to chattels argument? Because we thought it was simpler to go with the restitution, and perhaps we should have. When you say restitution, I differentiate that from unjust enrichment. I'm using them coterminously because that's what the restatement third does, Your Honor. But it's unjust enrichment. You don't think you do? Have you conceded that it's not a trespass to chattels? We're not conceding that, Your Honor. We didn't appeal that because that would force us into a narrow body of law in New York on whether this is a diminution in the functionality, whether it slows it down or something of that sort. And that's not our main claim. Our main claim is that we bought a product that would give us the capacity to have more privacy in our browsing history. This is something which Chief Justice Roberts, in the Riley v. California decision, described as being at the heart of concerns of modern life. That is, we don't want people to know that we went to WebMD and then looked up cancer treatments or something of that sort. It has tremendous impact upon the way we look. But these were all anonymous, right, anonymized? They were not linked to individuals, right? They were linked to a browser, which is the only thing that matters in this world because it's the browser that is the trigger for these ads to come in and for these vendors to start following you. What my name is is irrelevant in this world, and it should never turn on whether they can broadcast this publicly. We're not accusing them of being extortionists that want to broadcast this to blackmail us, but it's an insult to the sense of integrity that one has. Everybody has one of these iPhones, and you buy them thinking that you are protected from being deluged and monitored by outside entities. And what these people did was they came in and they disabled the functionality. They disabled why we buy these things. Does the criminal law address their conduct? I'm not sure, Your Honor. I'm not sure if this is criminal hacking or not. I have not looked at that question. Clearly, we... As to whether your client did seek that kind of action. Well, 33 attorneys general thought that this was actionable under their variant of the consumer protection, the deceptive trade practices laws, including the New York attorney general. They went after every company that engaged in this product. They got consent decrees. And now the question is whether they have to disgorge the illicit gains from this activity. All right, thank you. I know you're going to want to brief back. Thank you. Your adversary. Good morning, Your Honors. Michelle Kisloff on behalf of PulsePoint. Your Honors, the appellants in this case are asking this court to do something that no court in New York has ever done, which is take a situation where the plaintiffs have not alleged any harm whatsoever, any injury to them, whether pecuniary or non-pecuniary harm, no emotional distress, no publication of private facts, no lost time, no inconvenience, let alone no monetary injury, and turn that into an actionable injury. In fact, there is no support for the idea that this type of... that there is no support for this harm serving to support either an Article III standing action and certainly not a claim under the New York Deceptive Trades Practices Statute under 349 or unjust enrichment. Hack with impunity? Your Honor, this wasn't a... well, first of all, this isn't a hacking case. This was a placement, a workaround to place a minuscule data file on a... on the computers and, Your Honor, so that users could get more relevant advertising. I mean, cookie-based advertising on the Internet is common. If I understood the argument that was just made, that's exactly what Apple promises its purchasers will not happen. And so what you've done is deprived them of the ability to honor their promise. I think it's important, Your Honor, to look at what the New York JBL requires on that point, right? The New York JBL requires injury that is caused by the defendant's conduct. There is no allegation, if we go back to the complaint, Your Honor, that these plaintiffs even read the Safari Apple marketing statements along that line. There is certainly no allegation that they ever read PulsePoint's privacy policy. Set aside the JBL for a moment. Why isn't it the case that your clients profited at the plaintiff's expense? Your Honor, there is no case where this type of information, this browsing, undifferentiated, anonymous browsing history, has been found to be, even support really, standing alone, let alone an unjust enrichment claim. I would cite the panel to the Google case, the In Re Google case, which, of course, the plaintiffs have talked about. The Third Circuit in that case found no injury from that lost browser history value, right? The fact that Google was able to know the places you went on the Internet, that was not the loss of that as being exclusive to me. The Third Circuit didn't accept that as a form of injury, Your Honor. Not with the Seventh Circuit in the Gubala case, which we sent to you. The browser history alone, because you've not been deprived of it. If it were not anonymized, you would agree that there were an injury? I think in this, in New York, I think it would be very hard under the JBL to even find that, Your Honor. But certainly under the... So your client could publish and use for business purposes my browsing history with impunity, is that right? Sorry, Your Honor. Under New York law, of course, under the JBL, and under New York law in general, New York has taken a much more circumscribed view to the right to privacy than many other states. There is no generalized invasion of privacy tort here in New York. There is no generalized right to privacy in New York. New York has taken the view that it is limited to the very specific things in the statute, such as your name, your likeness, publication for commercial purposes. So I think, Judge Carney, what you're talking about would get towards what's protected under 50 and 51 of the New York civil rights law. But there is no general free-floating right to privacy under New York law. And certainly where it's not... My client might have suffered an injury, however. I'm sorry, I missed... My client might have suffered an injury that you would recognize, that their JBL would recognize, if my own browsing history were published widely among vendors. I think that's not before you, but that would be a much harder case for me, Your Honor. I'm trying to understand the limits, though, because we do have the placement of a cookie on a device that an individual owns, where typically, especially if it's on a phone, that's associated with one individual. And so it seems a very short step between anonymized data and de-anonymized data, and I'm concerned about that. Your Honor, this certainly is a case of de-anonymized data, right? So while there might be a case of injury if we publicized your anonymized data, that would get maybe closer to what the traditional tort of intrusion upon seclusion would be, or publication of private facts, those common law torts. We don't have either of those facts here. And, of course, in New York, there is no intrusion upon seclusion theory. So you can imagine cases, just speaking hypothetically, where there'd be pretty clear injury, even given that the data is not... or the data is anonymized. So if I understand the record correctly, let's suppose you deceptively changed the cookies, so now on my own computer I'm receiving advertisements as a result of your use of my own information. Maybe I share my computer with someone else, and that person infers something about where I've been and what I'm doing based on the advertisements that are popping up by virtue of the manipulation of the cookies. Two points on that, Your Honor. The first is, of course, that would possibly... you're talking, I think, about embarrassment, right? You're talking about some sort of emotional distress, or you're finding injury. You're saying, well, gee, I'm embarrassed because I share this with my co-worker or the person I live with and I didn't want them to know this. You're positing an injury. That's not in the complaint. There was no allegation of embarrassment, harm, decreased job opportunities. You're right. We could come up with that theory. I'm just exploring my colleague's point that the anonymization of the data doesn't mean there's no injury. You can imagine many ways in which injury can occur. I think that's right, Your Honor. It's just not here. It's just absent from this complaint. The other thing... You said you can send them ads. Yes. Why isn't what you've acquired the effective equivalent of an address? Because you can now send them material because you know how to send it to them that you didn't know how to reach them before. I think, Your Honor... Well, the case I would bring to Your Honor's attention on that is the Smith v. Chase Manhattan Bank case, which we've cited, which is an appellate division case. I apologize. I don't remember which department. But the allegation in that case was that Chase Bank, who had the plaintiff's information legitimately, but sold it, said, I wouldn't sell it, sold it. Now you started getting junk mail from advertisers. So it's very similar to what you're talking about, Your Honor. Now your address is out there and all these advertisers are sending you ads. The court found no claim under the New York GBL in that theory. The court said that's not injury, just the fact that you're getting advertisements you don't want. The appellate division found no injury there. The other thing, I just wanted to get back to Judge Carney's point. One thing to remember about this browser history information is that these plaintiffs were, of course, sharing this information with first party sites. So the notion that this browser history information is some sort of sensitive, protected information... Wait a second. It's disaggregated then. I mean, if you've gone to one site at your own volition and chosen to engage there buying a book from Amazon and then Amazon sends you, you might be interested in X, strikes me as much less intrusive and also part of the terms and conditions of doing business with Amazon, likely, than an aggregator of information who is then making available to third parties. I think... Is that entirely different? I'm sorry, Your Honor. Many, many first party sites have the ability to aggregate this information and do. Not just to Amazon, but news sites, et cetera. I think the point is... My point is not... Many first party sites you would go to aggregate. But I think my point, Your Honor, is it's not that this is some super sensitive category of information that the plaintiffs took significant steps to protect. Here what we know is they owned Apple products. We don't know that they ever read the privacy policy that Apple gave them additional promises. We certainly don't know whether they ever read the PulsePoint privacy policy. We don't know whether they took any steps to do anything to protect their private information. And, again, just the nature of browsing history, de-identified, anonymized browsing history, is that it's not of a level of super sensitivity that the courts of New York or the courts nationwide have chosen to protect. Help me again, though. So if I go to an Amazon site, I assume that it's somewhere in the terms and conditions that they're going to place a cookie and I can set my browser to accept cookies or for this site only or what have you. So there's some element of volition involved. Does PulsePoint have an analog in some way that Mr. Mount would have agreed to have the cookie placed on his site? I think the issue here, Your Honor, is, again, we just go back to injury, is that what is the thing that is so terrible that happened to the cookie? But what is the answer to my question, though? Is there some action that Mr. Mount took that was equivalent to my going to the Amazon site and agreeing to have their cookie placed on my site, on my computer? Well, I think, Your Honor, by going ñ well, if you really wanted to get into this, Your Honor, when you go to most first-party sites, if you went to a news site, for example, CNN, and you actually dug into the privacy policies of those sites, many of them do say that they allow cookies to be placed by partner companies. So you'd have to really go kind of site by site to see that. But many, many privacy policies contain disclosures that say exactly that, that we allow our partners to place ads. Yeah. And I think, again, that just goes to things that weren't alleged in the complaint. These plaintiffs never alleged that they took those steps to do those things. Your Honor, I did just want to also say, to get back to the point tható Your time is up. I understood, Your Honor. The point that opposing counsel was making, the point of this type of information being a taking of value has been rejected by the Third Circuit in the Google case, the browser history being a value. Even if you never tried to monetize it, even if you never claimed you had a loss of exclusive use of it, it was also rejected by the Seventh Circuit in Gabala and in the Neiman Marcus case, all of which are before you. And I think, Your Honor, the last thing I'll say before I sit down is that New York takes a very restrictive view onó New York insists that there be injuries separate from the deception, and that's the Small v. Larrillard case, and here there is no such injury alleged. Thank you, Your Honor. Thank you. Counsel. Much of the argument that Ms. Kisloff just gave was based on the idea that our clients did not rely on the representations made by the Safari browser or by PulsePoint in its public statements. There is no reliance requirement under either 349 or Unjust Enrichment. To return to the theme of Unjust Enrichment, it is to profit to your benefit to the detriment of somebody else. When they hacked our computers, that was to our detriment. They altered the functionality of a possession of ours. How do we know that that's something of value? Because they marketed what they got, and they profited handsomely for it. That's the essence of the claim. They are not allowed to hack our computers in order to get data from us, even if we don't want to monetize it ourselves, even if we couldn't monetize it ourselves. The fact that they hacked the computer is the wrong that underlies everything here. Now, Ms. Kisloff saysó It is the case in New York that would support that as an Unjust Enrichment claim in the circumstances you just identified, where you said, even if we couldn't have used it ourselves. Even if we wouldn't have, I should have said, Your Honor, because we could have. The allegation and the complaint is that we couldó Even if you wouldn't have. What case in New York supports an Unjust Enrichment claim in those circumstances? I think that on the computer side, the law is sparse. Now, when Ms. Kisloff said that there are no cases that recognize this, there are no cases that say that an invasion of privacy of this kind is not a basis for 349 or is not a basis for Unjust Enrichment. All the cases that we cite in our brief, including a West Virginia case, including a Washington State case, including some state Supreme Court cases, go our way on this, including Judge Batts in the Bates case. They go our way. They are not conclusive authority by any means, and in an eerie analysis, this is not binding on this court. But the idea that you can alter the functionality of our phones to make them transparent to outsiders and get away with that for your profit is the heart of our sense of privacy and dignity in the modern world. That's what the harm is. As you said, New York views privacy in a somewhat more limited fashion. Indeed, under 349, there don't seem to be any cases that have recognized an injury based on privacy loss unless there was confidential, individually identifiable information, or am I overlooking something? So to extend your argument as a privacy concern, I'm troubled. Right. The cases that we've cited have all dealt with ability to trace to the individual. But the argument that was just put forward was that that wouldn't be actionable either under their theory, that it doesn't matter whether it's anonymous. We don't have to decide that because that's not the case here. But there's no principle in New York law that says that privacy only turns on the fact of your name. If somebody publishes nude photos, and this is an example that we gave from the Seventh Circuit, you take the marine hacking incident today, it doesn't matter whether the person's name is known or not. It is the fact of publication of something that is private, even if not traceable. You're asking us to locate this in New York law, and so nothing in New York prevents it is not a very solid foundation for a federal court to say that's what New York law requires. I think that's why New York, when it adopts the restatement of restitution, is the easier path for this court because restitution says that you take something of value, it is not yours, you monetize it yourself, and you do so through what are morally, ethically, socially impermissible means, even if not unlawful directly under... That's not the principle of restitution. It is not a remedy at law. It is an equitable remedy, and New York, by adopting the restatement third, has adopted that theory of unjust enrichment. Would reaching that conclusion require us to send this to the New York Court of Appeals for its view on this? I think that's an interesting question, Judge Radji. I've puzzled... I'm not necessarily urging it. I'm just not sure that I've heard much about where New York law clearly allows us to reach the conclusion you're urging. Well, New York cases, again, they've adopted the restatement view. The restatement, for example, example illustration 10 of section 40 of the restatement third is a Connecticut case that says somebody comes onto someone's land with a metal detector, finds buried treasure, and they have to give it over to the owner of the land, even if the owner of the land was never going to look for it, didn't have a metal detector, anything of the sort. I understand... I don't have to explain to you that we've got both trespass there and the removal of property. I understand, Your Honor, but the equivalent, the virtual equivalent of trespass and this idea that it's just very small files that are put on there, they're all small. I mean, that's the nature of microprocessors. But the idea that they come into our phone and reset it, recalibrate our phone, is a physical insult of the modern world as much as trespass of land was in the world of 500 years ago. Thank you. Do you want to further address the certification question? You said it was interesting. Generally, certification, Judge Calabresi of this court is a big fan of certification questions. Usually, you either don't get a response, you don't get a response timely, or you get a response that's not altogether helpful because the state courts don't like to be told what to do for a kind of obvious reason. So I don't want to urge it. It's not receptive to certification. Your Honors, if you think . . . Very timely and very responsive and very . . . I have nothing but the highest regard for the New York Court of Appeals. If this is a practice that this court is comfortable with, we don't have a problem with that because this really is two fundamental questions of state law that are presented here. Thank you. Both sides will take the case under advisement. Counsel went a few minutes over. May I respond to just the two new points? No. Thank you. Thank you, Your Honor.